UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
----------------------------------------------------------------------x
                                                  :

SECURITIES AND EXCHANGE COMMISSION,     :
                                                  :

                           Plaintiff,        :

                                                  :

          - against -                  :      18-CV-00954-CCR

                                                  :

GRENDA GROUP, LLC, and                    :
GREGORY M. GRENDA,                     :

                                                  :

                       Defendants.      :

                                                  :
----------------------------------------------------------------------x


## REPLY MEMORANDUM OF LAW IN SUPPORT OF
## PLAINTIFF'S MOTION FOR POST-TRIAL REMEDIES


David Stoelting
Barry O'Connell
Securities and Exchange Commission
New York Regional Office
100 Pearl Street
New York, NY  10004
(212) 336-0174 (Stoelting)
stoeltingd@sec.gov
(212) 336-9089 (O'Connell)
oconnellb@sec.gov
Counsel for Plaintiff


March 21, 2022

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ................................................................................................. iii

PRELIMINARY STATEMENT ........................................................................................... 1

ARGUMENT ....................................................................................................................... 1

    I.      Defendants' Effort to Portray G. Grenda as a Victim of
             His Father's Conduct Should Be Rejected ................................................... 1

    II.     The Court Should Impose Injunctions and Third-Tier Civil Penalties. ......................... 6

CONCLUSION .................................................................................................................... 10

# TABLE OF AUTHORITIES

## Cases

*SEC v. Grenda Group, LLC, et al.*, 2021 WL 1955330 (W.D.N.Y May 17, 2021) .......................3

*SEC v. Kane,* 2003 WL 1741293 (S.D.N.Y. Apr. 1, 2003) ................................................9

*SEC v. Rajaratnam*, 918 F.3d 36 (2d Cir. 2019)...........................................................8

*SEC v. Syndicated Food Serv. Int'l*, 2014 WL 1311442 (E.D.N.Y. Mar. 28, 2014) ......................9

*SEC v. Universal Major Ind. Corp.*, 546 F.2d 1044 (2d Cir. 1976) ...................................8

*SEC v. Westport Capital Markets*, LLC, 547 F. Supp.3d 157 (D. Conn. 2021)...........................9

*United States v. Bereano,* 1998 WL 553445 (4th Cir. April 28, 1998) ................................6

*United States v. Biesiadecki,* 933 F.2d 539 (7th Cir.1991)..........................................6

*United States v. Brien,* 617 F.2d 299 (1st Cir.1980)................................................6

## Statutes and Rules

Section 209(d)(e)(2)(C) of the Advisers Act, 15 U.S.C. § 80b-9(e)(2)(C)...............................7

Plaintiff Securities and Exchange Commission respectfully submits this reply memorandum of law in support of its post-trial motion for injunctions and third-tier civil penalties against Gregory Grenda ("G. Grenda) and Grenda Group, LLC ("Grenda Group") (together, the "Defendants").[1]

## PRELIMINARY STATEMENT

The primary argument in Defendants' post-trial brief is that G. Grenda was an unwitting victim of "egregious" and "abhorrent behavior" by his father, W. Grenda, and that G. Grenda took "swift and definitive" action" upon learning in August 2016 that W. Grenda violated his bar. Defs. Br. at 7-8. The evidence presented to the jury at trial, however, proved that G. Grenda, to maintain his advisory fees, knowingly deceived Grenda Group's clients and exposed them to serious risk of financial harm both before and after August 2016. As a result, the Defendants—who continue to operate Grenda Group—should be enjoined from future violations of the Sections 203(f), 206(1) and 206(2) of the Advisers Act and ordered to pay a third-tier civil penalty.

## ARGUMENT

### I.    Defendants' Effort to Portray Grenda as a Victim of His Father's Conduct Should Be Rejected.

Defendants argue that they should not be enjoined and should not pay a significant penalty because their conduct was "not egregious," that G. Grenda's scienter was "minimal, at best," and that the violations were "isolated."  Defs. Br. at 7-9. Defendants' strategy of

---

[1] This reply brief adopts the following conventions: "W. Grenda" means Walter F. Grenda, Jr.; "Reliance" means Reliance Financial Advisors, LLC; "Defs. Br." means Defendants' Memorandum of Law in Opposition to Motion for Post-Trial Sanctions dated March 6, 2022 (Dkt. 138); "Advisers Act" means the Investment Advisers Act of 1940; "Schwab" means Charles Schwab & Co., Inc.; "Ex." means Plaintiff's exhibits admitted into evidence at trial; and "Tr." refers to the transcript of the jury trial conducted in this matter from December 1-10, 2021. For brevity, trial witnesses are referred to by their last names.

portraying G. Grenda as a well-meaning victim of his father, however, flies in the face of the evidence. In fact, G. Grenda flagrantly violated his fiduciary duties to his clients—who were primarily senior citizens with modest retirement savings—by permitting his father, a known financial predator, to associate with Grenda Group, to freely communicate with clients, and to have unfettered access to client account information. By doing so, G. Grenda exposed his clients to serious risks that G. Grenda knew about but purposefully concealed from his clients for years.

 G. Grenda acted with knowledge: he knew in December 2014 that W. Grenda had been charged with lying to clients at Grenda Group's predecessor firm, Reliance, and causing significant financial losses. Nevertheless, instead of keeping W. Grenda away from Grenda Group, G. Grenda viewed W. Grenda as "an equal partner in this mess" and told Walter that he was "[o]n your side 100%." Ex. 11 (6/5/15 email). The reason for this is obvious: from day one, Grenda Group's clients were all W. Grenda's clients and in order to keep the advisory fees flowing, G. Grenda had to hide the truth about W. Grenda from his clients.

G. Grenda knew his duties as an investment adviser. He testified before the jury that he knew that both he and Grenda Group were fiduciaries, that he had a duty of honesty, and was supposed to act with high ethical standards and in his clients' best interests. Tr. at 731-732. G. Grenda was also Grenda Group's chief compliance officer, and knew that he could neither "lie to clients" nor "omit[] statements of material fact" nor "make misleading statements" to clients. Tr. at 735-736. Despite knowing his duties, however, the evidence at trial established that G. Grenda repeatedly lied to Grenda Group clients and omitted material information that he should have disclosed.

Defendants seek to explain away this evidence by arguing that G. Grenda merely made an error of "interpretation" of the July 2015 bar and that any conduct prior to July 2105 should

be "excluded as irrelevant." Defs. Br. at 5-6. These arguments, though, were rejected by the Court's 2021 ruling that G. Grenda improperly permitted W. Grenda to associate with Grenda Group in violation of Advisers Act § 203(f). *SEC v. Grenda Group, LLC, et al.*, 18-cv-954, 2021 WL 1955330 (W.D.N.Y May 17, 2021) (granting SEC motion for partial summary judgment and rejecting the argument that conduct prior to the July 2015 bar was "irrelevant").

 The Defendants' argument that G. Grenda was a passive bystander is also contradicted by voluminous trial evidence. Indeed, G. Grenda's scheme of lies and concealment started from the moment Grenda Group was formed in early 2014. G. Grenda knew at that time that W. Grenda was under investigation by the SEC and FINRA, tr. at 752-758, and that all of Grenda Group's initial clients were former clients of W. Grenda's at Reliance. Tr. at 758. Instead of disclosing the truth, however, G. Grenda sent out several letters in 2014 to Grenda Group clients that identified W. Grenda as the "market strategist" of Grenda Group, represented that W. Grenda would be a part of Grenda Group going forward, and invited clients to continue to call W. Grenda on his cell phone number ending in 6234. Ex. 77 at 26-32.

 When W. Grenda was charged with fraud in December 2014, G. Grenda had a duty to disclose that to Grenda Group's clients, who had all been W. Grenda's clients at Reliance. Tr. at 503 (Prof. Arthur Laby: "if someone has been charged with fraud in this industry, that is something that investment advisory clients would simply want to know . . . the expectation in the industry is that disclosure of that would be made to advisory clients so that can decide"). And when W. Grenda was barred in July 2015, that also should have been disclosed. Tr. at 506 (Laby: "there's a strong expectation in the industry that advisory clients would want to know" of the bar).

 Defendants' brief also claims that there was "no evidence that any clients would have left

Grenda Group had there been disclosure of Walter Grenda's bar." Defs. Br. at 14. This is false.
Stephanie Tjhung testified that she "definitely" would have wanted to know that W. Grenda had
been charged with fraud and barred, and had she known she "would have looked for another
financial advisor." Tr. at 63-65. Linda Fusco knew nothing about the charges against W. Grenda
or the bar, and testified that she never would have become a Grenda Group client had she known.
*Id*. at 119-120, 124-125. Thomas Pollard testified that if he knew that W. Grenda had been
charged with fraud and then barred, he "would have terminated our account right then." Tr. at
286. Don Peters testified that he "[a]bsolutely" would have wanted to know about the bar and
"wouldn't have invested my money" if he knew. *Id*. at 429-430.

Defendants' brief (at 6) also asserts that in August 2016 G. Grenda took "swift and
definitive action" after being confronted by Michelle Smith of Schwab about the impersonations.
G. Grenda, however, never disclosed to clients the highly material information that Schwab
terminated Grenda Group due to W. Grenda's impersonations. In a brazen misrepresentation, G.
Grenda sent a letter to his clients falsely stating that he decided to change from Schwab because
another custodian offered "superior technology." Ex. 77 at 11. G. Grenda also permitted W.
Grenda to continue to use a Grenda Group phone before and after the July 2015 bar *and* before
and after the Schwab termination. Exs. 101-104 (summaries of phone records). As a result, W.
Grenda communicated freely by phone and text with Grenda Group's advisory clients for years
after being barred. *Id.*

G. Grenda's intentional lies to his clients about the reason that Schwab ended its
custodial relationship with Grenda Group was in furtherance of his ongoing scheme to hide
material information about W. Grenda's fraud charges and bar. Tjhung testified that she
"definitely" would have wanted to know that W. Grenda had called Schwab impersonating G.

4

Grenda as well as clients. Tr. at 63. G. Grenda falsely told Fusco that he decided to remove Schwab as custodian "because it was cheaper to buy stock." *Id*. at 122. And G. Grenda never told Pollard that Schwab terminated Grenda Group and that W. Grenda has impersonated Pollard on phone calls to Schwab. Id. at 284-285. Pollard testified that he "[d]efinitely" would have wanted to have known that information. *Id*. at 286-287.

Even the two witness called by the Defendants to testify on their behalf, Peter Andrews and Jack Wesley, were not told the truth. Andrews knew about the change from Schwab but testified that G. Grenda never told him why that happened. Tr. at 1167-1168. And in 2018, Wesley told Kimberly Yuhas, an SEC attorney, that he understood that Grenda Group chose not to do business with Schwab because Schwab "had some sort of vendetta against Grenda Group for taking their business away." Tr. at 1424-1425.

Defendants' remaining arguments are without merit. They argue that the bar was in the "public domain" and that this fulfilled G. Grenda's disclosure obligation. Defs. Br. at 12. G. Grenda admitted at trial, however, that there were no articles about the bar in the local press in July 2015 when it was imposed. Tr. at 1263-1264. In any event, whether or not the bar was in the "public domain" is irrelevant to G. Grenda's own obligation to disclose. As Laby testified, disclosure in a newspaper or on the SEC's web site does not reduce or even impact an adviser's disclosure obligations. Tr. at 497-499. The reason is that there is "a clear understanding in this industry that the investment adviser itself will be responsible for sending out that information to clients," and that the clients do not have the burden of "to go out and seek out this information." *Id*. at 498-499.

Defendants next argue that testimony from Wesley and Andrews was exculpatory because "they were aware of Walter Grenda's ban, but chose to stay with Defendants

regardless." Defs. Br. at 8. This misstates the record. At trial, Andrews testified vaguely that he "probably" heard of the bar from G. Grenda, tr. at 1142, but did not remember when. Tr. at 1166-1167. This testimony, however, was contradicted by a declaration Andrews signed in 2020 stating definitively that he did *not* speak with either W. Grenda or G. Grenda about the bar. Tr. at 1155.

Wesley also testified that he "heard there was a ban" but that he was "not sure when and how [he] heard it." Tr. at 1188-1189. Yuhas, however, testified on rebuttal that Wesley told her in 2016 that "he was not aware of any disciplinary action against Walter." Tr. at 1422. Yuhas met again with Wesley in 2018 and at that time Wesley "reiterated to [Yuhas] that he had absolutely no knowledge of any disciplinary action [against Walter] with FINRA or the SEC." Tr. at 1424-1425.

In any event, the testimony of Wesley and Andrews should be given little weight. *See United States v. Bereano,* Nos. 95–5312, 95–5395, 1998 WL 553445, at *4 (4th Cir. April 28, 1998) ( "The perception of the victim or target of the scheme is ultimately irrelevant to whether [the defendant] devised a scheme, or acted with the requisite intent to defraud.") (citing *United States v. Brien,* 617 F.2d 299, 311 (1st Cir.1980); *United States v. Biesiadecki,* 933 F.2d 539, 544 (7th Cir.1991) (evidence of customer satisfaction "improperly shift[s] the jury's attention away from the knowledge and intent of [defendant] and focus[es][it] instead on the beliefs of the victims of the alleged scheme to defraud").

## II.     The Court Should Impose Injunctions and Third-Tier Civil Penalties.

As shown in the SEC's opening brief, Dkt. 135, Defendants should be permanently enjoined, under Section 209(d) of the Advisers Act, 15 U.S.C. § 80b-(9), from future violations of Sections 203(f), 206(1) and (2) of the Advisers Act, and third-tier penalties should be

imposed.

Defendants' overlapping arguments against an injunction and third-tier penalties are without merit. The high degree of egregiousness and scienter in G. Grenda's conduct is discussed above. Defendants also claim that G. Grenda's conduct "was isolated" because W. Grenda operated his business "out of the same building." Defs. Br. at 9.  The evidence at trial, however, established that clients understood W. Grenda to be part of Grenda Group. Fusco testified that she repeatedly met with both Grendas, jointly and *after* the bar. Tr. at 111-119. Fusco testified that "I just thought [W. Grenda and G. Grenda] were like partners or something like that." Tr. at 161. Similarly, Peters attended the annual dinners with W. Grenda and G. Grenda, viewed the firm as a "family business" and met with both W. and G. Grenda after the bar. Tr. at 420-422. And numerous emails show that G. Grenda knew that W. Grenda was giving investment advice to Grenda Group clients *after* being barred. Ex. 26, 13, 16, 17, 19, 15, 28.

Defendants further argue (at 14) that no clients actually lost money and that there was no evidence of "the risk of substantial losses."  The relevant statute, however, permits third-tier penalties to be imposed when there is a "substantial *risk* of substantial losses" even if there were no actual losses. 15 U.S.C.§ 80b-9(e)(2)(C) (emphasis added).  Here, the fact that W. Grenda, a financial predator, had access to the accounts of vulnerable, financially unsophisticated clients and had the ability to transfer client money to and from clients' accounts created that risk. *See* Plaintiff's Memorandum of Law in Support of Post-Trial remedies dated February 10, 2022 (Dkt. 135), at 6-7 (describing instances of W. Grenda accessing client accounts and moving money).

In addition, there has been neither an acceptance of responsibility nor any assurances against future violations. Instead, G. Grenda again seeks to shift the blame for his own

misconduct by arguing that "the SEC did not move for a preliminary injunction" when this case was filed in 2018, and that as a result the Defendants should not be enjoined now. Defs. Br. at 10. In support, Defendants cite to *SEC v. Universal Major Ind. Corp.*, 546 F.2d 1044, 1048 (2d Cir. 1976). This case, however, supports the SEC position. In *Universal Major*, the Second Circuit rejected an argument similar to the Defendants' and found that "'cessation of illegal activity does not ipso facto justify denial of an injunction.'" *Id*. (citation omitted) (affirming district court's conclusion that defendant should be permanently enjoined).

Finally, Defendants also argue that the third-tier penalty of $1,550,000 for Grenda Group and a $320,000 penalty for G. Grenda would be "entirely disproportionate" to the settlement agreed to by W. Grenda to settle this matter. Defs. Br. at 16.  G. Grenda, however, was at all times the sole owner of Grenda Group and the sole person with the fiduciary responsibility to the clients. The fact that G. Grenda flouted his fiduciary duties in the manner he did, creating grave risks to his clients, is something he alone must answer for. It is appropriate under the facts of this case that G. Grenda's sanctions, proven by a preponderance of the evidence before a jury, be more severe than those that W. Grenda accepted in a consensual settlement years ago. In any event, district courts have a "broad mandate" to fashion and impose civil penalties. *SEC v. Rajaratnam*, 918 F.3d 36, 44 (2d Cir. 2019).  As discussed above and in the SEC's opening brief, all of the factors in this case weigh heavily in favor of significant civil penalties.

Finally, Defendants asked the Court to schedule "a hearing" to give them an opportunity to present evidence of their business expenses and tax returns. Defs. Br. at 15. Defendants, however, have not up till now made any argument based on inability to pay, nor do they dispute that they received $1.7 million in commissions from 2014 to 2018. Ex. 108 (summary chart showing commission). This is a case, moreover, in which "the broader deterrent message" of a

significant penalty is in the public interest. *See SEC v. Westport Capital Markets*, LLC, 547 F. Supp.3d 157, 174 (D. Conn. 2021) (finding that defendants "should not be able to escape the financial consequences of their actions because their assets are presently depleted").

Defendants' eleventh-hour request for a new hearing in order to present material which they have already had an opportunity to present does not justify further delay. The request for a hearing should be denied. *See SEC v. Syndicated Food Serv. Int'l*, 2014 WL 1311442, at *5 (E.D.N.Y. Mar. 28, 2014) (denying defendant's request for review of Magistrate Judge's recommendation of his "ability to pay the requested penalties" based only on "generalized objections"); *SEC v. Kane,* No. 97 Civ. 2931, 2003 WL 1741293, at *4 (S.D.N.Y. Apr. 1, 2003) ("[A] defendant's claims of poverty cannot defeat the imposition of a civil penalty by a court. If the defendant is indeed impecunious, the SEC will ultimately not be able to collect on the judgment. . .  In addition, the court agrees with the Commission that it should not ignore the possibility that a defendant's fortunes will improve, and that one day the SEC will be able to collect on even a severe judgment.").

## <u>CONCLUSION</u>

For the foregoing reasons, and for the reasons stated in the SEC's opening brief, the SEC

respectfully requests that the Court permanently enjoin the Defendants from future violations of

Advisers Act §§ 203(f), 206(1) and 206(2) and impose third-tier civil penalties.


Dated: New York, New York
            March 21, 2022

                                    Respectfully submitted,

                                    SECURITIES AND EXCHANGE COMMISSION

                                    /s *David Stoelting*
                                    _____
                                    David Stoelting
                                    Barry O'Connell
                                    New York Regional Office
                                    200 Vesey Street, Suite 400
                                    New York, NY  10281
                                    (212) 336-0174 (Stoelting)
                                    stoeltingd@sec.gov
                                    (212) 336-9089 (O'Connell)
                                    oconnellb@sec.gov