UNITED STATES DISTRICT COURT
FOR THE
WESTERN DISTRICT OF NEW YORK

| | |
|---|---|
| UNITED STATES SECURITIES AND EXCHANGE COMMISSION, )<br>)<br>) | |
| Plaintiff, ) | |
| ) | |
| v.  ) | Case No. 1:18-cv-00954-CCR |
| ) | |
| GRENDA GROUP, LLC and GREGORY M. GRENDA, )<br>)<br>) | |
| Defendants. ) | |

**OPINION AND ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION FOR POST-TRIAL REMEDIES**
(Doc. 135)

Pending before the court is Plaintiff United States Securities and Exchange Commission's (the "SEC") motion for post-trial remedies. (Doc. 135.) The SEC asks the court to impose a permanent injunction and civil penalties on Defendants Grenda Group, LLC ("Grenda Group") and Gregory M. Grenda ("G. Grenda"). On March 6, 2022, Defendants opposed the motion and the SEC replied on March 21, 2022. The court held a hearing on June 27, 2022. After the hearing, Defendants submitted 2018-2021 federal tax returns for Defendant G. Grenda and 2018-2020 federal tax returns for Defendant Grenda Group, at which time the court took the pending motion under advisement.

The SEC is represented by David P. Stoelting, Esq. Defendants are represented by Joseph G. Makowski, Esq.

**I.  Factual and Procedural Background.**

The SEC brought suit against Defendants for violations of their duties as registered investment advisers. On May 17, 2021, the court granted the SEC's partial motion for summary judgment and held that Defendants violated Section 203(f) of the Investment Advisers Act of 1940 ("Advisers Act"), 15 U.S.C. § 80b-3(f), by permitting

Walter Grenda, who had been barred from the securities industry, to associate with Defendants.

An eight-day jury trial held from December 2 to 9, 2021 resulted in a verdict for the SEC on all remaining counts in the SEC's complaint and a finding that Defendants had violated Sections 206(1) and 206(2) of the Advisers Act, 15 U.S.C. § 80b-6(1)-(2), and that Defendant G. Grenda had aided and abetted Defendant Grenda Group's violations. On December 13, 2021, the clerk entered judgment pursuant to the jury's verdict.

On February 10, 2022, the SEC filed the pending motion pursuant to 15 U.S.C. § 80b-9(d)-(e), seeking to permanently enjoin Defendants from violating Sections 203(f), 206(1), and 206(2) of the Advisers Act and to impose civil penalties of $320,000 against G. Grenda and $1,550,000 against Grenda Group. Defendants oppose the SEC's motion, arguing that a permanent injunction is not warranted and that civil penalties should total $10,000 for G. Grenda and $100,000 for Grenda Group.

## II. Conclusions of Law and Analysis.

### A. Whether the Court Should Grant a Permanent Injunction.

The SEC moves to permanently enjoin Defendants from violating Sections 203(f), 206(1), and 206(2) of the Advisers Act. Under the Advisers Act, when "any person has engaged . . . in any act or practice constituting a violation of," *inter alia*, Sections 203(f), 206(1), and 206(2) or "aided, abetted, counseled, commanded, induced, or procured . . . such a violation," the SEC may bring an action in the "proper" district court "to enjoin such acts or practices and to enforce compliance with this subchapter or any rule, regulation, or order hereunder." 15 U.S.C. § 80b-9(d). "[A] permanent or temporary injunction or decree or restraining order shall be granted without bond" "[u]pon a showing that such person has engaged . . . in any such act or practice, or in aiding, abetting, counseling, commanding, inducing, or procuring any such act or practice[.]" *Id.*

The parties cite *SEC v. Commonwealth Chem. Sec., Inc.*, 574 F.2d 90, 99 (2d Cir. 1978) for the proposition that the SEC must establish a reasonable likelihood of future violations before a permanent injunction may issue. They agree the relevant factors the

2

court should consider are:

> [1] [T]he fact that the defendant has been found liable for illegal conduct; [2] the degree of scienter involved; [3] whether the infraction is an "isolated occurrence;" [4] whether defendant continues to maintain that his past conduct was blameless; and [5] whether, because of his professional occupation, the defendant might be in a position where future violations could be anticipated.

*SEC v. Cavanagh*, 155 F.3d 129, 135 (2d Cir. 1998) (quoting *Commonwealth Chem. Sec., Inc.*, 574 F.2d at 100).

The Second Circuit has held that courts must find a likelihood of future violations before granting injunctive relief under the Securities Act of 1933 and the Securities Exchange Act of 1934, *see id; Commonwealth Chem. Sec., Inc.*, 574 F.2d at 99, because each Act requires a finding that the person to be enjoined "is engaged or is about to engage in" a violation. *See* 15 U.S.C § 78u(d)(1) (Securities Exchange Act of 1934); 15 U.S.C. § 77t(b) (Securities Act of 1933).[1] "In contrast[,]" the Advisers Act "say[s] 'has engaged' rather than 'is about to engage'" and thus requires only a past violation, not a likelihood of future violations. *Commonwealth Chem. Sec., Inc.*, 574 F.2d at 99 n.7; *see also* 15 U.S.C. § 80b-9(d). Some district courts, without noting the difference in statutory language, have nonetheless required the SEC to establish a likelihood of future violations in Advisers Act cases. *See, e.g., SEC v. Westport Cap. Mkts., LLC*, 547 F. Supp. 3d 157, 165 (D. Conn. 2021); *SEC v. Rashid*, 2020 WL 5658665, at *25–*26 (S.D.N.Y. Sept. 23, 2020). This court need not resolve whether it *must* find a likelihood of future violations because there is a substantial likelihood of future violations in this case, as well as established past violations.

As the SEC points out, the evidence at trial established that "Defendants' concealment of Walter Grenda's role at the firm spanned at least five years and was not in any way isolated." (Doc. 135 at 5.) It involved a widespread series of acts and

---

[1] The Second Circuit explained in *Commonwealth Chem. Sec., Inc.* that it was "this language" in the present and future tenses that required "the SEC to go beyond the mere facts of past violations and demonstrate a realistic likelihood of recurrence." 574 F.2d at 99-100.

3

omissions. Defendants had ample notice of Walter Grenda's SEC bar and ongoing violations, which included impersonating Defendant G. Grenda and a client, and nonetheless failed to notify clients or take adequate steps to prevent Walter Grenda's continued association. Defendant G. Grenda was not a low-level employee; he was the sole owner and officer, as well as the compliance officer, of Defendant Grenda Group, with full decision-making power. Defendant G. Grenda actively participated in misleading his clients and testified untruthfully about the facts and circumstances surrounding his and Walter Grenda's violations at trial.

The jury found Defendants acted knowingly or recklessly. Defendants, however, accept no responsibility for their violations. They remain registered investment advisers with an active client base, including many elderly and unsophisticated investors. Defendants are thus in a position to, and likely to, reoffend. *Cf. Westport Cap. Mkts., LLC*, 547 F. Supp. 3d at 166 (declining to issue injunction because company "already or will soon close its doors" and principal "will no longer be in the same type of position of authority as he held when serving as [company's] owner, president, and chief compliance officer"). Because Defendants have violated the Advisers Act and are reasonably likely to do so again, a permanent injunction is appropriate. *See Rashid*, 2020 WL 5658665, at *25-*26 (imposing permanent injunction for violations of Section 206).

Defendants can claim no prejudice because the permanent injunction requested by the SEC merely requires them to do what the law already requires. It, however, offers the prospect of more immediate relief in the event of a violation, which is necessary to protect the public. The requested injunction is limited and proportional to the conduct at issue as it applies only to those sections of the Advisers Act that Defendants have already violated. *See SEC v. Am. Bd. of Trade, Inc.*, 751 F.2d 529, 535 (2d Cir. 1984) (approving of "limited" injunctions as "'mild prophylactic[s]'" but reversing an injunction of "extraordinary breadth" which applied to all "federal securities laws, however unrelated to the acts charged") (quoting *SEC v. Cap. Gains Rsch. Bureau, Inc.*, 375 U.S. 180, 193 (1963)).

For the foregoing reasons, the court GRANTS the SEC's request for a permanent

4

injunction and HEREBY PERMANENTLY ENJOINS Defendants G. Grenda and Grenda Group from violating Sections 203(f), 206(1), and 206(2) of the Advisers Act.

### B. Whether the Court Should Impose Civil Penalties.

The SEC asks the court to impose the maximum monetary penalties under 15 U.S.C. § 80b-9(e). Defendants oppose this request and ask that any monetary penalty be limited to minimum tier penalties because Walter Grenda, not Defendants, was the primary malefactor. In addition, they point out that Walter Grenda was only ordered to pay a civil penalty of $25,000 pursuant to a consent decree.

Under the Advisers Act, when "any person has violated any provision[,]" the court "shall have jurisdiction to impose, upon a proper showing, a civil penalty to be paid by the person who committed such violation." 15 U.S.C. § 80b-9(e)(1). Congress enacted the civil penalties provisions "to further the dual goals of punishment of the individual violator and deterrence of future violations." *Off. Comm. of Unsecured Creditors of WorldCom, Inc. v. SEC*, 467 F.3d 73, 81 (2d Cir. 2006) (internal quotation marks omitted). A civil penalty must be imposed separately against each defendant and cannot be imposed jointly and severally. *See SEC v. Pentagon Cap. Mgmt. PLC*, 725 F.3d 279, 288 (2d Cir. 2013).

The Advisers Act provides for three tiers of penalties for "each violation[.]" 15 U.S.C. § 80b-9(e). First tier penalties may be imposed for any violation. Second tier penalties may be imposed for a violation which involves "fraud, deceit, manipulation, or deliberate or reckless disregard of a regulatory requirement." *Id.* at (e)(2)(B). Third tier penalties additionally require that a violation "directly or indirectly resulted in substantial losses or created a significant risk of substantial losses to other persons." *Id.* at (e)(2)(C)(II).

The limit on penalties is the greater of "the gross amount of pecuniary gain" from each violation or a statutory limit, *id.*, which is adjusted for inflation. *See* 17 C.F.R. § 201.1001, *table I*. The maximum penalties for Defendant G. Grenda are $7,500 for first tier, $80,000 for second tier, and $160,000 for third tier. *Id.* The maximum penalties for Defendant Grenda Group are $80,000 for first tier, $160,000 for second tier, and

5

$775,000 for third tier. *Id.*

The SEC asks for third tier penalties, totaling $320,000 against Defendant G. Grenda and $1,550,000 against Defendant Grenda Group. Defendants argue that only first tier penalties totaling $10,000 against Defendant G. Grenda and $100,000 against Defendant Grenda Group are appropriate.

"The amount of the penalty shall be determined by the court in light of the facts and circumstances." 15 U.S.C. § 80b-9(e)(2)(A). The court has a "broad mandate" to determine the appropriate civil penalty, and "in setting such penalties," "courts frequently consider" factors "including (1) the egregiousness of the defendant's conduct; (2) the degree of the defendant's scienter; (3) whether the defendant's conduct created substantial losses or the risk of substantial losses to other persons; (4) whether the defendant's conduct was isolated or recurrent; and (5) whether the penalty should be reduced due to the defendant's demonstrated current and future financial condition." *SEC v. Rajaratnam*, 918 F.3d 36, 44 (2d Cir. 2019) (internal quotations marks and citations omitted). These factors "have not been deemed an exhaustive list" and "are not to be taken as talismanic." *Id.* at 45. Courts may also consider a defendant's wealth, his or her refusal to admit wrongdoing, and his or her lack of cooperation with authorities. *SEC v. Alpine Sec. Corp.*, 413 F. Supp. 3d 235, 245 (S.D.N.Y. 2019).

Defendants assert that their ability to pay renders a reduced penalty appropriate and submitted tax returns for Defendant G. Grenda from 2018 to 2021 and for Defendant Grenda Group from 2018 to 2020. While these tax returns do not include Defendants' assets or liabilities, they document consistent and substantial income.[2] As the SEC notes, because of his age, Defendant G. Grenda has significant future earning potential and, at this point, Defendants remain actively engagement in the investment adviser business. *See Westport Cap. Mkts., LLC*, 547 F. Supp. 3d at 173 (finding that "substantial future

---

[2] For example, in 2018, 2019, and 2020 Defendant G. Grenda reported adjusted gross income of $85,273, $80,939, and $86,182, respectively, the vast majority in salary drawn from Defendant Grenda Group. In those same tax years, Defendant Grenda Group reported total income of $337,746, $295,320, and $323,823, respectively.

earning potential" weighs in favor of imposing penalties). Defendants have thus failed to establish they are in a "distressed financial condition" or that they have an inability to pay a civil penalty over time. *SEC v. Nadel*, 2016 WL 639063, at *26 (E.D.N.Y. Feb. 11, 2016) (collecting cases reducing civil penalties based on financial condition), *report and recommendation adopted*, 206 F. Supp. 3d 782 (E.D.N.Y. 2016).

In light of the deterrence goal of civil penalties, "courts routinely award substantial civil penalties—along with disgorgement—when defendants commit numerous violations of the securities laws with *scienter*, even if it [is] unclear that defendants will be able to pay such judgments." *Id.* at 174 (citation omitted). Here, Defendants "numerous violations . . . with *scienter*," *id.*, were established by the jury's verdict. Accordingly, the court's civil penalties must reflect the fact that Defendants' violations were widespread, repeated, accompanied by *scienter*, and far from inadvertent.

Defendants ask the court to impose first tier penalties, rather than the SEC's requested third tier penalties, for "permit[ting]" a barred person, Walter Grenda, "to become, or remain, a person associated" with Defendants in violation of Section 203(f). 15 U.S.C. § 80b-3(f). As the court observed in granting summary judgment, permitting association could have included "passively failing to prevent W. Grenda from continuing his association[.]" (Doc. 87 at 21.) (alterations adopted). At trial, because the fact of association was established, the jury was not asked to consider whether Defendants' violations of Section 203(f) involved "fraud, deceit, manipulation, or deliberate or reckless disregard of a regulatory requirement." 15 U.S.C. § 80b-9(e)(2)(B). Only first tier civil penalties are thus warranted, especially as the more egregious aspects of Defendants' conduct may be addressed in the context of their other violations. Because Defendants permitted Walter Grenda's association to continue for years, even after they had knowledge of Walter Grenda's impersonation of Defendant G. Grenda and one of Defendants' clients, maximum first tier penalties shall be ordered. The court therefore imposes civil penalties of $7,500 against G. Grenda and $80,000 against Grenda Group for their respective violations of Section 203(f).

In contrast to Defendants' violations of Section 203(f), violations of Sections

206(1) and 206(2) by definition involve fraud, deceit, or manipulation. *See* 15 U.S.C. § 80b-6(1) ("to employ any device, scheme, or artifice *to defraud* any client or prospective client") (emphasis supplied); § 80b-6(2) ("to engage in any transaction, practice, or course of business which *operates as a fraud or deceit* upon any client or prospective client") (emphasis supplied). Second or third tier penalties are thus appropriate for these violations. This conclusion is underscored by the facts established at trial, which demonstrated an array of deceitful and misleading acts and omissions by Defendants in an effort to conceal Walter Grenda's SEC bar so that Defendants could benefit from Walter Grenda's association and retain his client base.

While Defendants claim the only egregious conduct was "on the part of Walter Grenda," (Doc. 138 at 15), Defendants themselves assisted in perpetrating a fraud on their clients, many of whom were unsophisticated investors and relied exclusively on Defendants' expertise. Defendants sought to deflect blame to Walter Grenda and continued to falsely deny their knowledge of his malfeasance at trial while seeking to excuse their own. These factors weigh in favor of imposing significant penalties.

It is a closer question whether Defendants' violations of Section 206 "directly or indirectly resulted in substantial losses or created a significant risk of substantial losses to other persons[,]" as required to impose third tier penalties. 15 U.S.C. § 80b-9(e)(2)(C)(II). There is no evidence of substantial losses because the SEC successfully moved *in limine* to preclude any evidence of investor gains or losses.

Defendants argue that Walter Grenda did not place Grenda Group clients at risk and assert "[t]here was no evidence whatsoever presented at trial that Defendants' conduct[] created substantial losses, or the risk of substantial losses, to any Grenda Group client or to the market." (Doc. 138 at 17.) The SEC contends that permitting Walter Grenda's association with Defendant Grenda Group, and fraudulently failing to disclose his conduct to clients, put those clients at risk of substantial losses. The court agrees.

As the SEC points out, the evidence at trial established that Walter Grenda had a history of "predatory" conduct, including taking money from clients under false pretenses and "marketing a hedge fund that lost all its value" to vulnerable, elderly investors. (Doc.

8

Case 1:18-cv-00954-CCR   Document 143   Filed 08/11/22   Page 9 of 10


135 at 9.) The evidence at trial established that Walter Grenda impersonated Defendant G. Grenda and a Defendant Grenda Group client in attempts to gain access to client accounts and that Defendants failed to notify their clients or take effective remedial steps. The evidence at trial also established that when Charles Schwab terminated its relationship with Defendants due to Walter Grenda's conduct, Defendants misled their clients as to the reason for the termination. Defendants' conduct thus created a significant risk of substantial losses, not only to clients whose accounts Walter Grenda attempted to access, but to all clients unjustifiably exposed to Walter Grenda's predatory conduct.

While the SEC asks for only a single penalty for violations of Section 206, the jury returned a verdict finding Defendant Grenda Group liable for two violations (violations of Section 206(1) and Section 206(2)) and Defendant G. Grenda liable for four violations (violations of Section 206(1) and Section 206(2) and aiding and abetting both of Grenda Group's violations). Each is a separate and distinct violation of the Advisers Act. "Courts have discretion to determine what constitutes a separate violation, which may vary from case to case." *Rashid*, 2020 WL 5658665, at \*27. In light of the jury's verdict, "the punitive and deterrent purposes of the securities laws" would be "best served" by imposing a separate penalty for violations of Section 206(1) and Section 206(2). *Id.* However, because the same conduct forms the basis for Defendant G. Grenda's violations and aiding and abetting violations, assessing him penalties for a single violation of Section 206(1) and a single violation of Section 206(2) is sufficient.

The court therefore imposes a $160,000 penalty against Defendant G. Grenda ($80,000 for his violation of Section 206(1) and $80,000 for his violation of Section 206(2)) and a $320,000 penalty against Defendant Grenda Group ($160,000 for its violation of Section 206(1) and $160,000 for its violation of Section 206(2)) for their respective violations of Section 206. The total civil penalties for violations of Sections 203(f), 206(1), and 206(2) are $167,500 for Defendant G. Grenda and $400,000 for Defendant Grenda Group.

These penalties are supported by the ample evidence the SEC presented at trial and the judgment in its favor on all counts of its complaint. They are also consistent with

penalties imposed in recent Advisers Act cases in the Second Circuit. *See Westport Cap. Mkts., LLC*, 547 F. Supp. 3d at 175 (imposing "total civil penalties of $500,000 against [company] and $200,000 against [individual]" for violations of Advisers Act); *Rashid*, 2020 WL 5658665, at *28 (imposing penalty of $240,000 against individual for violations of Section 206). Finally, the penalties reflect the special relationship of trust and confidence in which the violations took place. Defendants knew and understood their fiduciary obligations but flagrantly violated them in an effort to convince clients that Walter Grenda was not barred from the industry and continued to lend his purportedly sound investment expertise to Defendant Grenda Group clients.

For the foregoing reasons, the court GRANTS IN PART and DENIES IN PART the SEC's request for civil penalties and ORDERS Defendant G. Grenda to pay a total civil penalty of $167,500 and Defendant Grenda Group to pay a total civil penalty $400,000.

## CONCLUSION

For the foregoing reasons, the SEC's motion for post-trial remedies is GRANTED IN PART and DENIED IN PART. (Doc. 135).

SO ORDERED.

Dated this 11th day of August, 2022.

Christina Reiss, District Judge
United States District Court